**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MATTHEW BURNETT and
THOMAS BELCASTRO,
on behalf of themselves and all
others similarly situated,

        Plaintiffs,

v.

ROBERT BOSCH LLC, USA,

        Defendant.

Case No. 8:14-cv-01361-VMC-MAP

**MEMORANDUM OF LAW**
**IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

ARGUMENT .................................................................................................................. 4

    A.    This Court Has Subject Matter Jurisdiction over the Entirety of This Case....................... 4

        1.    Both Plaintiffs Have Alleged an "Injury in Fact." .......................................... 4

            a.    Mr. Burnett ............................................................................................ 4

            b.    Mr. Belcastro ........................................................................................ 7

        2.    Plaintiffs Have Standing to Seek Injunctive Relief.......................................... 7

        3.    Plaintiffs Have Standing to Assert Claims Not Only under Florida Law, But Also Under California, Illinois, Michigan, New Jersey, and New York Law. ...................... 10

    B.    Plaintiffs Have Stated a Claim under the FDUTPA. ....................................... 11

        1.    Plaintiffs Have Adequately Alleged that RBLLC Committed a Deceptive Act. ........... 11

        2.    Plaintiffs Have Alleged that RBLLC's Deception Caused Actual Damages................ 15

    C.    Plaintiffs Have Properly Stated a Claim for Breach of Express Warranty. ...................... 16

    D.    Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment.............................. 17

    E.    Plaintiffs Have Stated a Magnuson-Moss Warranty Claim. ............................................ 18

CONCLUSION............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Coca-Cola Co*, 2013 WL 7044866 (E.D.N.Y. July 18, 2013).................................. 9

*Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162 (2d Cir. 2012) ................................... 15

Askin v. Quaker Oats Co., 818 F. Supp. 2d 1081 (N.D. Ill. 2011)................................................ 4

*Carroll v. Lowes Home Centers, Inc.*, 2014 WL 1928669 (S.D. Fla. May 6, 2014) .................... 8

*City First Mortg. Corp. v. Barton*, 988 So. 2d 82 (Fla. 4th DCA 2008) ..................................... 11

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983) ......................................................................... 8

*Costa v. Kerzner Int'l Resorts, Inc.,* 2011 WL 2519244 (S.D. Fla. June 23, 2011)..................... 11

*Davis v. Powertel*, 776 So.2d 971 (Fla. Dist. Ct. App. 2000).......................................................... 8

*Dicuio v. Brother Intern'l Corp.*, 2012 WL 3278917 (D.N.J. Aug. 9, 2012) ............................... 9

*Dorsey v. Rockhard Labs., LLC*, 2014 WL 4678969 (C.D. Cal. Sept. 19, 2014).................. 19, 20

*Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011) ................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ............................ 4

*Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045 (S.D. Fla. 2009)................. 9

*Garcia v. Kashi Co.,* 2014 WL 4392163 (S.D. Fla. Sept. 5, 2014) ............................................. 16

GCB Comm 'ns, Inc. v. U.S. South Comm'ns, Inc., 650 F.3d 1257 (9th Cir. 2011) .................... 5

*Green v. FedEx Nat'l, LTL, Inc.*, 2009 WL 2905907 (M.D. Fla. Sept. 8, 2009).......................... 11

*Haloway v. Protective life Ins.*, 2007 WL 2094162 (M.D. Ga. Oct. 3, 2013) ............................... 6

*Henderson v. Gruma Corp.* 2011 WL 1362188 (S.D. Cal. 2011) .................................................. 9

*Hillman Const. Corp. v. Wainer*, 636 So. 2d 576 (Fla. Dist. Ct. App. 1994).............................. 18

*In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012)............................................. 11

*In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litig.*, 2012 WL 3435335 (N.D. Ill., Aug 14, 2012) ......................................................................................................... 6

*Karhu v. Vital Pharm., Inc.,* 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ........................... 16, 17

*Koehler v. Litehouse, Inc.,* 2012 WL 6217635 (N.D. Cal. Dec.13, 2012) ..................................... 9

*Koziara v. City of Casselberry*, 392 F.3d 1302 (11th Cir. 2004) ..................................................... 4

*Larsen v. Trader Joe's Co.*, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ................................... 9

*Lawson v. FMR LLC*, 134 S. Ct. 1158 (2014) ............................................................................. 18

*Mardegan v. Mylan, Inc.*, 2011 WL 3583743 (S.D. Fla. Aug. 12, 2011) .................................... 16

*Marty v. Anheuser-Busch Cos., LLC*, 2014 WL 4388415  (S.D. Fla. Sept. 5, 2014) .................. 14

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008) .................................................... 11

*Morris v. California*, 966 F.2d 448 (9th Cir.1991) ...................................................................... 16

*Nature's Prods., Inc. v. Natrol, Inc.,* 990 F. Supp. 2d 1307 (S.D. Fla. 2013) ............................. 14

*Patrick v. S. Cent. Bell Tel. Co*., 641 F.2d 1192 (6th Cir. 1980) .................................................. 13

*PNR, Inc. v. Beacon Prop. Mgmt*., 842 So. 2d 773 (Fla. 2003) .................................................... 11

*Porter v. Chrysler Group LLC* 2013 WL 6839872 (M.D. Fla. Dec. 27, 2013) ........................... 11

*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013) ....................................... 10

*Robinson v. Hornell Brewing Co.*, 2012 WL 1232188 (D.N.J. Apr. 11, 2012) .............................. 9

*Rosen v. Spanierman*, 894 F.2d 28 (2d Cir. 1990) ......................................................................... 5

*Saltzman v. Pella*, 606 F.3d 391 (7th Cir. 2010) .......................................................................... 10

*SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178 (S.D. Fla. 2013) ........................... 14

*Smith v. Wm. Wrigley Jr.*, 663 F. Supp. 2d 1336 (S.D. Fla. 2009) .................................. 15, 16, 17

*Williams v. Gerber Prods.,* 552 F.3d 934 (9th Cir. 2008) ...................................................... 12, 14

**Statutes**

15 U.S.C. § 2301(6)(A) ...................................................................................... 18, 19

15 U.S.C.A. § 2310 ............................................................................................ 18, 19

Fla. Stat. Ann. § 501.204(2) .................................................................................... 13

Fla. Stat. Ann. § 672.313(1)(a) ............................................................................... 17

**Other Authorities**

J. Weinstein & M. Berger, Weinstein's Evidence s 407(04) (1976) ............................................ 13

Black's Law Dictionary (9th ed. 2009) ...................................................................... 19

**Rules**

16 C.F.R. 23.2 ................................................................................................ 13

## PRELIMINARY STATEMENT

The outcome of this motion turns upon a straightforward question: is it plausible that a reasonable consumer would interpret an assertion that a spark plug had a "platinum center electrode" to mean that the spark plug had platinum in its center? The answer is self-evident: yes.

Plaintiffs Matthew Burnett and Thomas Belcastro brought this action against Robert Bosch LLC, USA ("RBLLC") on behalf of themselves and all similarly situated purchasers of the Bosch Platinum Series Spark Plug ("the Spark Plug"). Plaintiffs, like many others, bought Defendant's Spark Plugs relying upon false claims that the Spark Plugs had platinum centers.

Defendant now moves to dismiss the Operative Complaint ("Compl."). The motion is baseless.

Defendant first contends that this Court lacks subject matter jurisdiction over this case. Defendant's predominant argument is that Plaintiffs lack standing to pursue their claims because they have not suffered "injuries in fact." But this is untrue: both Mr. Burnett and Mr. Belcastro paid more for the Spark Plugs than they would have paid had they known the Spark Plugs did not contain platinum as advertised. This clearly constitutes an "injury in fact" under Article III. Nor did Mr. Burnett's injury dissipate because RBLLC made an unsolicited donation of five gift cards to a charity in which Mr. Burnett is involved.

Next, RBLLC argues that Plaintiffs have failed to state a claim under the FDUPTA, because Plaintiffs have failed to plausibly allege that Defendant's advertisements would mislead a reasonable consumer as to the amount of platinum in a Spark Plug. This argument amounts to little more than the audacious contention that a spark plug can have a "platinum center electrode" without having any platinum in its center. The Court should reject this claim outright.

RBLLC also argues that Plaintiffs' express warranty claims should fail, because Plaintiffs are not in privity with Defendant.  However, as courts in this District have repeatedly noted, Florida law does not permit a business to offer an express warranty to end purchasers, only to then shield itself in an absence of privity.  Plaintiffs have therefore stated a viable express warranty claim under Florida law.

Finally, RBLLC contends that Plaintiffs' Magnuson Moss Warrant Act claim fails, because Defendant did not warrant that the Spark Plugs would be "defect free."  This argument misconstrues the relevant case law.  The MMWA claim, like the other claims, survives RBLLC's motion to dismiss.

## FACTUAL BACKGROUND

Robert Bosch LLC, USA is a Delaware corporation headquartered in Michigan. Compl. at ¶ 14.  It is a subsidiary of Robert Bosch GmbH, a multinational engineering and electric company based in Germany.  *Id*. at ¶¶ 14-15.

Defendant sells several different kinds of spark plugs, including the Spark Plugs at issue here.  The Spark Plugs are more expensive than competitor products.  For example, Autolite sells a spark plug whose only platinum component is its tip.  Autolite's platinum tip plugs sell for significantly less than the Spark Plugs.  *Id.* at ¶ 17.  Defendant uses the supposedly large quantity of platinum in the Spark Plugs to justify the Spark Plugs' premium price. *Id.* at ¶¶ 16-18.

During the relevant period, RBLLC represented in its advertisements and packaging that the Spark Plugs had platinum centers.  For example, a brochure on Defendant's website dated 2010 ("the Brochure") stated that "[o]nly Bosch uses a platinum center electrode that's heat-infused into a ceramic insulator."  *Id*. at ¶ 18; *Id.* at Exhibit A.  "Center electrode" means the entire center of a spark plug to the reasonable consumer.  The Brochure also contained

illustrations of the Spark Plugs ("the Brochure Illustration"), which suggested that the Spark Plug's center was silver—the color of platinum. *Id.* at ¶ 19.

In fact, the Spark Plug's center is not made of platinum. Only the tip of the Spark Plug is. Nor is the Spark Plug's center silver in color. Instead, it is narrow and black. *Id.* at ¶¶ 18-19.

Defendant has apparently replaced the Brochure with a newer brochure ("the New Brochure"). The New Brochure, attached hereto as Exhibit 1, contains a graphic that identifies the "center electrode" as "copper." Curiously, the graphic is essentially identical to the illustration of the Iridium spark plug at paragraph 20(a) of Plaintiffs' complaint, which Defendant stated had been "cropped by Plaintiff Burnett to conceal the fact that it depicted an entirely different design from that of the Platinum Series Spark Plugs." Defs.' Br. at 15.

Mr. Burnett and Mr. Belcastro are Florida residents who bought Spark Plugs during the relevant period. Mr. Belcastro bought multiple Spark Plugs a month for over two years, for installation in his cars and his girlfriend's car. He bought Spark Plugs, in part, due to claims that the Spark Plugs' platinum center increased durability over competitors' spark plugs. *Id.* at ¶ 13.

For his part, Mr. Burnett bought Spark Plugs, with his own money, in order to donate their platinum to the charity Pans4Paws, Inc. *Id.* at ¶ 12. When he learned that there was far less platinum in the Spark Plugs than Defendant's advertising indicated, he called RBLLC to complain. *Id.* at ¶ 11. In response, RBLLC donated five $100 Target gift cards to Pans4Paws. *Id.* Mr. Burnett never released future claims against Defendants, nor did Defendants ever suggest to Mr. Burnett that they intended the donation to settle Mr. Burnett's claim. *Id.*; Defs.' Ex. A.

Although they purchased the Spark Plugs for different uses, both Mr. Burnett and Mr. Belcastro, "purchased the Spark Plugs because of Defendants' misrepresentations that the Spark Plugs had platinum center electrodes." *Id.* at ¶ 33.

## ARGUMENT

**A.  This Court Has Subject Matter Jurisdiction over the Entirety of This Case.**

RBLLC contends that, for several different reasons, this Court lacks subject matter jurisdiction over this action.  These arguments are incorrect.

### 1.  Both Plaintiffs Have Alleged an "Injury in Fact."

"A plaintiff seeking to invoke a federal court's jurisdiction must show," among other things, that "it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1304-05 (11th Cir. 2004) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).  Plaintiffs have alleged that they suffered financial injuries as a result of Defendant's conduct: had they known that the centers of the Spark Plugs were not made from platinum, Plaintiffs would not have purchased them at a premium price.  This plainly constitutes an injury cognizable under Article III. *See Askin v. Quaker Oats Co.,* 818 F. Supp. 2d 1081, 1084 (N.D. Ill. 2011) (where the plaintiff alleged that she paid a premium price for a food product based on the defendant manufacturer's false representations that the product did not contain unhealthy trans fats, the "price differential represent[ed] a concrete injury-in-fact").

RBLLC nonetheless maintains that neither Plaintiff suffered an injury in fact.  Plaintiffs address, in turn, RBLLC's arguments as to Mr. Burnett and Mr. Belcastro.

#### a.  Mr. Burnett

RBLLC argues that Mr. Bennett has suffered no injury in fact because "he [did not] purchase the Spark Plugs for his own benefit."  Defs.' Br. at 5.  In other words, according to Defendant, a consumer who buys a product with the intent to give it away lacks standing to seek

redress against the seller.  Such a rule is completely unsupported by the relevant case law, and would contravene public policy.

RBLLC has failed to point to a single case in which a court determined that a plaintiff lacked standing because she *intended* to give the product at issue away.  Nor does Plaintiff know of any case, in any court, suggesting that a purchaser's intent to part with a product at a later date impacts her ability to bring a suit for consumer fraud.

Rather, RBLLC's entire argument relies upon one case, *Rosen v. Spanierman*, 894 F.2d 28 (2d Cir. 1990), which is inapposite.  There, the Second Circuit held that a woman who bought a painting for her daughter and son-in-law lacked a viable fraud suit against the seller.  Rather, only the gift recipient had standing to bring the case.  In other words, *Rosen* stands for the unremarkable proposition that a consumer lacks standing to bring a fraud action when she is no longer in possession of the item in question.

The situation here is different in a critical respect: Mr. Burnett never gave away the Spark Plugs.  Were *Rosen* extended to this circumstance, then where the buyer intended to give away the purchase but never did, *no one* would have standing to bring suit against a seller.  Article III does not immunize the seller of a defective Christmas gift simply because the product's defect becomes manifest while still in the purchaser's possession.

RBLLC also argues that Mr. Burnett suffered no injury in fact, because RBLLC donated five $100 Target gift certificates to Paws4Paws.  This argument is nonsense.

A consumer lacks standing to bring a claim for monetary relief when, before the filing of her suit, the opposing party pays her everything she demands in the action. *See GCB Comm'ns, Inc. v. U.S. South Comm'ns, Inc.,* 650 F.3d 1257, 1267 (9th Cir. 2011). For at least three independent reasons, RBLLC's gift card donation does not undermine Mr. Burnett's standing.

5

First, as the materials appended to RBLLC's brief demonstrate, Defendant made its "payment" not to Mr. Burnett, but to a legally distinct entity.  Surely, an unsolicited donation to Mr. Burnett's charity does not cure his injury in fact, as it does not restore him to the position he was in before purchasing the Spark Plugs.  *See, e.g.*, *Haloway v. Protective life Ins.*, No. 07 Civ. 109, 2007 WL 2094162, at *1-2 (M.D. Ga. Oct. 3, 2013) (dismissing action because "Defendant has submitted uncontroverted evidence that Defendant *refunded to Plaintiff* the unearned premium prior to the date that Plaintiff filed this lawsuit" (emphasis added)).  This critical distinction makes each and every case cited by RBLLC inapposite.[1]

Second, RBLLC's letter to Mr. Burnett states that the donation was a gratuity, "offer[ed] in goodwill for [Pans4Paws'] efforts" and out of "appreciate[ion of] the important work [Pans4Paws] is doing," *not* to recompense Mr. Burnett for purchasing their fraudulently advertised Spark Plugs.  Defs.' Ex. A, Ex. 2.  This Court should not permit RBLLC to recharacterize a donation given to a charity as settlement of a possible claim by an individual.

Third, despite the fact that Mr. Burnett paid for his Spark Plugs with cash, RBLLC's donation was made in Target gift cards. RBLLC has pointed to no cases suggesting that a seller can moot a claim with something other than legal tender.  Just as this Court would not countenance an argument that a litigant fulfilled her obligation by paying a jury verdict with gift cards, so too it should not countenance RBLLC's argument that it made Mr. Burnett whole in this fashion.[2]

---

[1] Plaintiffs do not dispute that a consumer has the right to settle her claim in exchange for a donation to a third party. But Mr. Burnett did not agree to settle his claim. Thus, the only question is whether the donation to a third party can deprive a plaintiff of his right to sue for his own injuries.  Clearly, it cannot.

[2] Even if RBLLC had satisfied Mr. Burnett's monetary claim (they have not), Mr. Burnett would still have a claim for injunctive relief.  *Accord In re Sears, Roebuck & Co. Tools Marketing & Sales Practices Litig.*, 2012 WL 3435335, at *2-4 (N.D. Ill., Aug 14, 2012) (FDUTPA claim not mooted where defendant offered to pay plaintiff far more than maximum recovery under the statute, because plaintiff had claims for injunctive and declaratory relief).

### b.  Mr. Belcastro

Next, RBLLC argues that Mr. Belcastro has suffered no injury in fact.  This is so, RBLLC appears to argue, because Mr. Belcastro did not buy the Spark Plugs "as a consequence" of them containing platinum.  Defs.' Br. at 8.  But Article III does not require that a plaintiff alleging consumer fraud demonstrate reliance.  Indeed, Eleventh Circuit case law has held that a plaintiff in federal court need not demonstrate reliance to bring a claim under the FDUTPA. *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011).  And in any event, the Complaint specifically alleges that Mr. Belcastro relied on RBLLC's fraudulent advertising to his detriment. *See, e.g.*, Compl. at ¶ 33 (alleging that "Plaintiffs purchase the Spark Plugs because of Defendants' misrepresentations").  RBLLC's argument is therefore without merit.

Puzzlingly, RBLLC also asserts that Mr. Belcastro lacks standing because he did not first seek a refund from Bosch or express his dislike of the Spark Plugs.  Plaintiffs know of no requirement that a consumer express his dissatisfaction before bringing a consumer fraud action under the relevant state and federal laws.  Indeed, none of the consumer protection statutes under which Mr. Belcastro's claim was bought require pre-suit notice of any sort.

In sum, Mr. Burnett and Mr. Belcastro have both suffered injuries in fact.  They therefore have constitutional standing to bring this action.

### 2.  Plaintiffs Have Standing to Seek Injunctive Relief.

RBLLC next argues that Plaintiffs lack standing to seek injunctive relief.  They assert that because Plaintiffs have now uncovered the deceit, Plaintiffs "cannot claim a threat of any supposed future injury."  Defs.' Br. at 11.  This argument has fared poorly in federal courts, and for good reason.

It is beyond dispute that Plaintiffs have standing to pursue injunctive relief under state law.  The FDUTPA is "designed to protect . . . the rights of the consuming public at large," *Davis v. Powertel,* 776 So.2d 971, 975 (Fla. Dist. Ct. App. 2000).  It accomplishes this goal, in part, by allowing "[a]nyone aggrieved by a violation of the FDUTPA [to] seek declaratory and injunctive relief under the statute."  *Carroll v. Lowes Home Centers, Inc.*, 12 Civ. 23996, 2014 WL 1928669, at *4 (S.D. Fla. May 6, 2014).  Thus, where a plaintiff has suffered an injury under the FDUTPA, she "has standing to pursue a claim for injunctive . . . relief," even where she faces no risk of continuing harm.  *Id.*  As is demonstrated above, Plaintiffs have suffered cognizable, financial injuries.  Accordingly, they have standing to seek injunctive relief under the FDUTPA.

RBLLC nonetheless argues that Plaintiffs lack standing under Article III, because they cannot demonstrate they are "likely to suffer future injury" from Defendant's conduct. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983).  According to RBLLC, Plaintiffs cannot possibly make such a showing, because "they will [not] in the future be under any claimed misapprehension that the 'entire center portion' of [the Spark Plug] . . . is composed of platinum."  Defs.' Br. at 11.

Were courts to accept RBLLC's interpretation of the federal standing requirement, consumers would never—or almost never—be able to bring an action for injunctive relief against a deceitful seller.  A plaintiff in a consumer protection action has always uncovered the deceitful practice at issue in the case, and therefore, by RBLLC's logic, are unlikely to be deceived again.  But precluding consumers from seeking injunctions under the FDUTPA and similar state statutes would eviscerate the intent of these consumer protection laws, which, as we explain above, is to allow injured consumers to bring suit on behalf of others who will be injured in the future.  Indeed, the FDUPTA specifically seeks to make it *easier* for consumers to enjoin deceitful

behavior.  It would therefore be antithetical to basic principles of federalism to conclude that the objectives of FDUTPA cannot be achieved in federal court.

For this reason, courts have "consistently held that plaintiffs have [Article III] standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer." *Ackerman v. Coca-Cola Co*, 09 Civ. 395, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013); *Koehler v. Litehouse, Inc.,*No. 12 Civ. 04055, 2012 WL 6217635, at *6 (N.D. Cal. Dec.13, 2012) (concluding that the plaintiff had standing to sue for injunctive relief even though he admitted he did not intend to make another purchase of the product in question, because construing Article III standing more narrowly in a false advertising class action would "eviscerate the intent of the California legislature in creating consumer protection statutes because it would effectively bar any consumer who avoids the offending product from seeking injunctive relief.") *Larsen v. Trader Joe's Co.*, 11 Civ. 5188, 2012 WL 5458396, at *3-4 (N.D. Cal. June 14, 2012) (same); *Henderson v. Gruma Corp.* 10 Civ. 4173, 2011 WL 1362188, at *7 (S.D. Cal. 2011) (same); *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1057 (S.D. Fla. 2009) ("Any person aggrieved by a violation of the FDUTPA may seek . . . injunctive relief under the statute. There is no requirement that a plaintiff show an ongoing practice or irreparable harm, and declaratory relief is available regardless of whether an adequate remedy at law also exists."). These cases are persuasive, and should be followed here.[3]

---

[3] Courts that have applied the rule advocated by RBLLC often do so with regret, and only because they are plainly bound by circuit precedent.  For example, in *Robinson v. Hornell Brewing Co.*, 11-cv-218, 2012 WL 1232188 (D.N.J. Apr. 11, 2012), Judge Simandle "note[d] that, as a result of the controlling precedent in this area, class action plaintiffs pursuing injunctive relief to prevent consumer fraud may, in general, have a difficult time satisfying the demands of Article III standing," since "[b]y necessity, such cases can involve only identified plaintiffs who have become aware of the misleading nature of the label. *Id.* at *7. *See also Dicuio v. Brother Intern'l Corp.*, 11-cv-1447, 2012 WL 3278917, at *16 (D.N.J. Aug. 9, 2012) ("echo[ing] Judge Simandle's concern"). This Court is not bound by similarly misguided precedent, and should therefore decline to apply such a Draconian rule.

In any event, even if a plaintiff must allege some risk of future injury in order to seek an injunction in a state consumer protection case, they have done so here.  The Complaint specifically alleges that Mr. Burnett routinely purchased the Spark Plugs for several years.  *Cf. Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 195 (D.D.C. 2013) (noting that "repeat past purchases" and "brand loyalty" suggest likelihood of future harm).  Nor does the Complaint "indicate[] that [Mr. Burnett does] *not* intend to purchase the products in the future." *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 192-93 (D.D.C. 2013).  These factors, combined with ongoing misconduct, demonstrate the potential for future injury.  *See generally id.*

In sum, Plaintiffs have standing to seek injunctive relief under the FDUPTA.

### 3. Plaintiffs Have Standing to Assert Claims Not Only under Florida Law, But Also Under California, Illinois, Michigan, New Jersey, and New York Law.

While it is true that the Plaintiffs are Florida residents, they allege an identical injury to those sustained by residents of California, Illinois, Michigan, New Jersey and New York.  The Seventh Circuit's ruling in *Saltzman v. Pella*, 606 F.3d 391, 393-394 (7th Cir. 2010), is instructive.  In *Pella*, the court found that the consumer fraud statues of the very states at issue here are sufficiently similar to be adjudicated together.  The court made this ruling despite the fact that the case did not include plaintiffs from each of the states implicated.  RBLLC's citation of a wage and hour case featuring fundamentally different state causes of action and a summary judgment ruling are inapposite.

At minimum, the Court here should defer ruling upon this issue until class certification, because the Plaintiffs here have adequately alleged injury in fact.  Just as the court in *Porter v. Chrysler Group LLC,* found that at the motion to dismiss stage it was premature to rule upon standing for a plaintiff with one car alleging a defect in multiple cars, so too is it inappropriate for the Court here to prematurely rule upon standing as to other states when the residents of those

10

states were subject to the exact same false statements and material omissions as the named Plaintiffs.  2013 WL 6839872, *2 (M.D. Fla. Dec. 27, 2013).

## B.  Plaintiffs Have Stated a Claim under the FDUTPA.

"A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008).  Plaintiffs have adequately stated all three elements of a FDUTPA claim under Rule 8(a).[4]

### 1.  Plaintiffs Have Adequately Alleged that RBLLC Committed a Deceptive Act.

Under Florida law, a "deceptive act" is a "representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR, Inc. v. Beacon Prop. Mgmt*., 842 So. 2d 773, 777 (Fla. 2003). Plaintiffs have alleged that RBLLC's Brochure suggested to consumers that the Spark Plugs were made of platinum, and that this representation was false.

Plaintiffs point to two aspects of the Brochure that suggest the Spark Plugs' contain platinum in their center.  First, there is the Brochure's claims that "Bosch uses a platinum center electrode that's heat-infused into a ceramic insulator."  The term "center electrode" is widely used to signify the electrode running through the center of a spark plug.  *See, e.g.*, "How

---

[4] RBLLC argues that Plaintiffs' FDUTPA claim must survive Rule 9(b)'s heightened pleading standard.  Defendant is mistaken: Rule 9(b) does not apply, because Plaintiffs do not allege fraud. *See Green v. FedEx Nat'l, LTL, Inc.*, No. 09-cv-445, 2009 WL 2905907, at *5 n.1 (M.D. Fla. Sept. 8, 2009) (Hernandez Covington, J.); *see also Costa v. Kerzner Int'l Resorts, Inc.,* 11-cv-60663, 2011 WL 2519244 (S.D. Fla. June 23, 2011) (rule Rule 9(b) inapplicable to FDUTPA claims because FDUTPA claims are distinct from fraud claims under Florida law). But even if Plaintiffs claims included allegations of fraud (they do not), the Complaint sufficiently alleges the "who, what, when, where and how of [Defendant's] allegedly false statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)). Specifically, the Complaint provides: (1) the substance of the false and misleading claims in Defendants' advertising and the identity of the party responsible for the misleading claims, Compl. at ¶¶ 16-20; (2) the time period in which Plaintiffs relied on Defendant's material misrepresentations, *id.* at ¶¶ 11, 13, 20; (3) that Plaintiffs viewed Defendant's misrepresentations on the Spark Plug's advertising, and in reliance of that advertising, purchased the Spark Plugs in Florida, *id.* at ¶¶ 11, 13, 33; (4) the manner in which Defendant's statements are misleading, *id.* at ¶¶ 18-20. No more detail is necessary at this stage. *Cf. In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1097-1101 (C.D. Cal. 2012).

Products   Are   Made:   Spark   Plugs," http://www.madehow.com/Volume-1/Spark-Plug.html#ixzz3EerZC6SV (defining "center electrode" as "a thick metal wire that lies lengthwise within the plug and conducts electricity from the ignition cable hooked to one end of the plug to the electrode gap at the other end").[5]   Indeed, as the Complaint notes, the Iridium illustration, though it depicts a different type of Bosch spark plug, clearly suggests that the center electrode is the entire central portion of a spark plug.  *See* Compl. at ¶ 20. This lends credence to Plaintiffs' allegation that the term "center electrode" would mean the entire central portion of a spark plug to a reasonable consumer.[6]

In fact, the allegations in the Complaint demonstrate that it would be *unreasonable* for a consumer to read the Brochure's claim as suggesting that only the tip of the Spark Plug is made from platinum: the above statement clearly avers that the portion of the center electrode that is "heat-infused into [the] ceramic insulator" is made from platinum.  But as discovery will demonstrate, only the body of the center electrode, and not the tip, is adjacent to a spark plug's ceramic insulator. Thus, a reasonable consumer would certainly read the above sentence to mean that the entire body of the center electrode was made from platinum.

Second, there is the Brochure illustration, republished in the Complaint at Paragraph 19, which falsely suggests that the center portion is the same silver color and substance as the Spark

---

[5] Defendant argues that Plaintiffs' FDUTPA claims "is not based upon any statement appearing anywhere in any Bosch literature."  Defs.' Br. at 2.  But this is plainly not so.  Plaintiffs allege that the term "platinum center electrode" misleadingly suggests —both in and of itself, and in context—to the reasonable consumer that the entire center of the electrode was platinum.  It is black letter law that use of a misleading, undefined term constitutes a deception. *Cf. Williams v. Gerber Prods.,* 552 F.3d 934, 930 (9th Cir. 2008) (labeling a product "'fruit juice snacks' . . . potentially suggest[ed] (falsely) that those fruits or their juices are contained in the product," despite the fact that there were no allegations that the packaging or advertising explicitly stated that the product contained fruit juice).

[6] Defendant contends that the Iridium illustration is completely irrelevant, because it depicts a different spark plug than is at issue here.  In reality, the fact that the illustration depicts a different spark plug is unimportant. A consumer would expect that the "center electrode" in one Bosch spark plug was located in the same place as a "center electrode" in another.  Moreover, Plaintiffs take issue with Defendants' contention that they have committed a "sleight of hand."  Defs.' Br. at 15. Indeed, it is Defendant whose papers misconstrue the import of the Iridium illustration. Defendant admonishes Plaintiffs for using the Iridium illustration, despite the fact that *a nearly identical illustration*, depicting the Platinum Series Spark Plug, is present in the New Brochure. *See* Exhibit 1.

12

Plug's platinum tip, while in reality, the Spark Plug's center is neither platinum, nor silver in color.  *See* 16 C.F.R. 23.2 (providing that "[i]t is unfair and deceptive to use, as part of any advertisement . . . any visual representation . . . which misrepresents . . . [a] material aspect of an industry product."); *see also* Fla. Stat. Ann. § 501.204(2) (requiring courts to give weight to the FTC in determining whether conduct is deceptive).  It is certainly plausible that this illustration, particularly together with the above-discussed sentence, would mislead a reasonable consumer into believing that the Spark Plug contained more platinum than it actually did.

RBLLC argues that the Brochure's statement and illustration do not mislead the reasonable consumer, because "the platinum center electrode of Bosch Platinum Series Spark Plugs comprises the very tip of the Spark Plugs."  Defs.' Br. at 16.  In this sleight of *words*, RBLLC suggests a reasonable consumer would interpret "platinum center electrode" to mean "platinum tip."  Defendant "proves" this by pointing to illustrations on various Bosch web pages.

This argument is dishonest, and Defendant should be estopped from making it.  As Plaintiffs' Exhibit 1 demonstrates, RBLLC currently has a version of the Platinum Series brochure on their website that concedes that the Spark Plug's "center electrode" *is* its center portion—not its tip, as Defendant contends in its brief—and that that portion of the Spark Plug is made of copper.[7]

In any event, the new evidence supplied by RBLLC—including the other Bosch webpages upon which it relies—shows, at the very most, that there is a dispute about whether

---

[7] Assuming *arguendo* that the Court accepts RBLLC's argument that their decision to change the description of the Spark Plugs from having a "platinum center electrode" to having a "platinum tip" should be excluded under Rule 407, this Court should nonetheless consider the fact that the illustration in the New Brochure specifically identifies the center electrode as the *copper*, center portion of the Spark Plug. Plaintiffs offer it not to show that Defendants acted culpably, but "as affirmative proof to rebut defendant's claim[]" that the "center electrode" in the Spark Plug is tantamount to the Spark Plug's tip. *Patrick v. S. Cent. Bell Tel. Co*., 641 F.2d 1192, 1196 (6th Cir. 1980) (quoting J. Weinstein & M. Berger, Weinstein's Evidence s 407(04) (1976)).  RBLLC's argument is squarely contradicted by its New Brochure.  Thus, excluding this evidence would be "manifestly unjust."  *Id*.

RBLLC's advertising is misleading.   But "[t]he question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss."  *See Williams*, 552 F.3d at 938; *see also Nature's Prods., Inc. v. Natrol, Inc.,* 990 F. Supp. 2d 1307, 1322 (S.D. Fla. 2013) ("Whether that conduct constitutes an unfair or deceptive trade practice [under the FDUTPA] is a question of fact for the jury to determine.")  At this stage, Plaintiffs need only allege a plausibly deceptive advertisement.  Plaintiffs have done so.

Even assuming arguendo that other webpages—unseen by Plaintiffs—were not deceptive about the amount of platinum in the Spark Plugs, this does not erase the fact that the Brochure was misleading.  Nor do these webpages cancel out the Spark Plugs' packaging, which stated without qualification that the Spark Plugs contain a platinum center electrode.  A reasonable consumer is not required to look through every page of RBLLC's website to separate truth from fiction. *Cf. Marty v. Anheuser-Busch Cos., LLC*, 13 Civ. 23656, 2014 WL 4388415, at *5 (S.D. Fla. Sept. 5, 2014) ("A reasonable consumer is not required to open a carton or remove a product from its outer packaging in order to ascertain whether representations made on the face of the packaging are misleading.").

Finally, RBLLC's argument is predicated upon two web pages that were not relied upon, or even referenced, in the Complaint.[8]  It was therefore improper for RBLLC to rely on them at the motion to dismiss stage.  *See SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1188-89 (S.D. Fla. 2013) (declining to consider a web page at the motion to dismiss stage that plaintiffs did not mention in the complaint).on the face of the packaging are misleading.").

---

[8] The Complaint relied upon the Brochure, available at http://boschautoparts.com/SparkPlugs/Documents/2213531_PlatPlugSeriesCONBRO_10.pdf, and an illustration from www.boschautoparts.com/SparkPlugs/Pages/iridium.aspx.  RBLLC relies on *completely different* Bosch webpages (http://boschautoparts.com/SparkPlugs/Pages/Platinum2.aspx and http://boschautoparts.com/SparkPlugs/Pages/Platinum4.aspx.  Needless to say, a complaint's reliance on one web page does not give a defendant license to rely on any, tangentially related page.

**2. Plaintiffs Have Alleged that RBLLC's Deception Caused Actual Damages.**

Despite RBLLC's claim to the contrary, Plaintiffs also adequately allege causation and actual damages under the FDUTPA.   Specifically, Plaintiffs allege that the Spark Plugs' premium price is a direct result of RBLLC's misrepresentation, and that Plaintiffs would not have paid the premium had they known the Spark Plugs' actual composition.  *See* Compl. at ¶¶ 11, 13, 33-34.  This easily satisfies the causation and damages prongs of the FDUTPA.  *Cf. Smith v. Wm. Wrigley Jr.*, 663 F. Supp. 2d 1336, 1339-401(S.D. Fla. 2009) ("The Complaint alleges that 'Plaintiff was exposed to and saw Wrigley's advertising claims and purchased Eclipse® gum in reliance on these claims.'  Compl. ¶ 9.  The Complaint further alleges that 'as a result of the misleading messages . . . , Wrigley has been able to charge a price premium for Eclipse® gum.' *Id.* ¶ 7.  Accepting these allegations as true, the Court finds that Plaintiff alleges that she 'has suffered a loss' which was proximately caused by Defendant's deceptive, misleading and unfair trade practices.")

RBLLC argues that Plaintiffs' claims should be dismissed because Plaintiffs "have failed to make any allegation ruling out the many other factors that could account for retailers' decisions to price [the Spark Plugs] at a 'premium' price."  Defs.' Br. at 19.  But Plaintiffs need not exclude other possible reasons for the Spark Plugs' premium price in order to survive a motion to dismiss.  Rather, they need only demonstrate that Plaintiffs' misrepresentation is a "plausible" reason for their premium price. *See Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162, 190 (2d Cir. 2012) ("[A]lthough an innocuous interpretation of the defendants' conduct may be plausible, that does not mean that the plaintiff's allegation that that conduct was culpable is not also plausible.")  And it is surely plausible that the premium price of a "Platinum Series" spark plug was due, at least in part, to its supposed platinum content.

15

Thus, Plaintiffs have pleaded all three elements of a FDUTPA claim.  Accordingly, the claim should survive RBLLC's motion to dismiss.

## C.  Plaintiffs Have Properly Stated a Claim for Breach of Express Warranty.

RBLLC next argues that Plaintiffs fail to state a claim for breach of express warranty, because there is no contractual privity between Plaintiffs and RBLLC.  But as courts in this District have repeatedly noted, Florida law does not permit a business to offer an express warranty to end purchasers, only to then shield themselves in an absence of privity.[9]

Although some case law suggests a bright line rule that a plaintiff must be in privity with the seller to bring an express warranty claim, courts in this district have declined to require privity in all cases, noting that such a rule is both unsupported by Florida law and patently unfair. *See, e.g.*, *Mardegan v. Mylan, Inc.* No. 10-cv-14285, 2011 WL 3583743, n.4 (S.D. Fla. Aug. 12, 2011) (declining to dismiss an express warranty claim despite the absence of privity).  Instead, recent caselaw in this District suggests that privity is unnecessary where (a) there were no facts in the pleadings indicating Plaintiffs could have expected to receive relevant information about the true nature of the product, and (b) the alleged express warranty was contained on the products' packaging and consumer advertising.  *See Garcia v. Kashi Co.,* 12 Civ. 21678, 2014 WL 4392163, *21-22 (S.D. Fla. Sept. 5, 2014); *Karhu v. Vital Pharm., Inc.,* 13 Civ. 60768, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013); *Smith v. Wm. Wrigley Jr.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009).  This rule makes sense: a business that targets its express warranty to the end-purchaser should not then be permitted to cloak itself because they lack privity.

---

[9] Elsewhere in their brief, RBLLC argues that Mr. Belcastro lacks standing to bring suit because he never "sought a refund of the purchase price . . . pursuant to the Bosch money-back performance guarantee." Defs.' At 8.  It is remarkable that, in the same brief, RBLLC would argue that Mr. Belcastro is precluded from bringing suit because he did not seek to use Bosch's express warranty, but also that Mr. Belcastro lacked the requisite privity to demand a refund under Bosch's express warranty.  RBLLC should be judicially estopped from making such patently contradictory arguments. *See Morris v. California*, 966 F.2d 448, 452 (9th Cir.1991) (explaining that judicial estoppel "bars a party from taking inconsistent positions in the same litigation").

Thus, in *Karhu*, Judge Cohn declined to dismiss an express warranty claim against a dietary maker despite the fact that the consumer purchased the product through an online intermediary, because the two elements outlined above had been satisfied. First, "there [were] no facts in the pleadings that indicate[d] that Plaintiff could expect to receive relevant scientific information about Meltdown's ingredients from the retailer." 2013 WL 4047016, at *6. And second, "the express warranties in this case were . . . clearly directed toward the end-purchaser," in that they were on advertisements geared towards the purchaser, as well as on the product's packaging. *Id.* Here, as in *Karhu*, Plaintiffs bought products through a retailer, not a learned intermediary. *Cf. Smith*, 663 F. Supp. 2d at 1343 ("[I]t defies common sense to argue that purchasers of Eclipse gum presumed that the cashier at the local convenience store is familiar with" the veracity of Wrigley's claim that its gum kills germs). Moreover, the express warranty at issue was contained in a brochure that was clearly aimed at Plaintiffs and other end purchasers. So Plaintiffs express warranty claims survive, despite the absence of privity.

RBLLC also argues that the express warranty claim fails because Plaintiffs have failed to allege that RBLLC made a written warranty on which Plaintiffs relied. This is incorrect. As explained above, RBLLC's advertising falsely suggested that the entire center portions of the Spark Plugs were platinum. This constituted an express warranty, which Plaintiffs relied on to their detriment. *See* Fla. Stat. Ann. § 672.313(1)(a) (defining an "express warranty" as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates").

## D.  Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment.

Plaintiffs next allege a claim for unjust enrichment. "The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has

knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994). Plaintiffs have alleged that (1) they conferred profits on Defendant by buying the Spark Plugs; (2) Defendant has knowingly retained the benefit; and (3) Defendant's enrichment was a result of their "deliberate misrepresentations or omissions made in connection with the advertising, marketing, promotion, and sale of the Spark Plugs." Compl. at ¶ 49. Plainly, then, Plaintiffs have properly stated a claim for unjust enrichment.

RBLLC's sole argument to the contrary is that they have committed no misconduct, because their Spark Plug advertising was not misleading. But as Plaintiffs have demonstrated above, RBLLC is mistaken. Therefore, Plaintiffs' unjust enrichment claim should survive RBLLC's motion to dismiss.

**E.  Plaintiffs Have Stated a Magnuson-Moss Warranty Claim.**

The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, provides a federal remedy for, among other things, "a consumer who is damaged by the failure of a supplier [or] warrantor . . . to comply with . . . a written warranty." 15 U.S.C.A. § 2310. Plaintiffs argue that RBLLC's, Spark Plug suppliers and warrantors, ran afoul of the MMWA by failing to abide by their express warranties to Plaintiffs, Spark Plug consumers.

RBLLC makes two arguments as to why the MMWA claim fails. Both are unavailing. First, RBLLC argues that Mr. Burnett is not a "consumer" under the MMWA. But this is contradicted by the plain language of the statute. *See Lawson v. FMR* LLC, 134 S. Ct. 1158, 1165 (2014) ("In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning.'"). The MMWA defines a "consumer" as "a

buyer (other than for the purposes of resale) of any consumer product."  Mr. Burnett has alleged

that he bought Spark Plugs "other than for the purpose of resale": he bought them to *donate* their

parts to charity.  *See* Black's Law Dictionary (9th ed. 2009) (defining "resale" as "[t]he act of

*selling* goods or property — previously sold to a buyer who breached the sales contract — to

someone else") (emphasis added).  Therefore, Mr. Burnett is a "consumer" under the MMWA.

Next, RBLLC argues their promise that the Spark Plugs have a platinum center does not

constitute a "written warranty" under the MMWA.  The MMWA defines "written warranty" as

> any written affirmation of fact or written promise made in connection with the
> sale of a consumer product by a supplier to a buyer which relates to the nature of
> the material or workmanship and affirms or promises that such material or
> workmanship is defect free or will meet a specified level of performance over a
> specified period of time.

15 U.S.C. § 2301(6)(A). Clearly, RBLLC's assertion that their Spark Plugs contain platinum

center electrodes constitutes a "written affirmation of fact . . . made in connection with the sale

of a consumer product" and that "relates to the nature of material."  RBLLC would have it,

however, that their affirmation that the Spark Plugs contain platinum electrodes does not

constitute "an affirmation or promise that the Spark Plugs are 'defect free.'" Defs.' Br. at 24.

But the plain meaning of the term "defect" suggests otherwise.  A "defect" is "[a]n

imperfection or shortcoming, esp[ecially] in a part that is essential to the operation or safety of a

product."  Black's Law Dictionary (9th ed. 2009).  As the Complaint notes, RBLCC claimed that

the Spark Plugs were more durable and better functioning because of their platinum center

electrode.  Compl. at ¶¶ 13, 18.  Without a platinum center electrode, the Spark Plugs have a

"shortcoming" that is "essential to the operation."  That is, they are defective.  *See Dorsey v.*

*Rockhard Labs., LLC*, 13 Civ. 07557, 2014 WL 4678969, at *9 (C.D. Cal. Sept. 19, 2014) (a

defendant's claims that its products were "Sexual Performance Enhancer for Men" and "Fast & Effective" were actionable under the MMWA).

RBLLC's cases suggest nothing to the contrary.  Rather, they stand for the proposition that "[a] product description does not constitute a warranty under the MMWA." *Anderson v. Jamba Juice Co.*, 888 F. Supp.2d 1000, 1004 (N.D. Cal. 2012) (claim that a product was "All Natural" was not a promise that product would be defect free).  But unlike a representation that a product is "All Natural," Defendant's affirmation here relates to the efficacy of the Spark Plugs. *See Dorsey*, 2014 WL 4678969, at *9 (distinguishing *Anderson* on the grounds that the assertion that a product is a "Sexual Performance Enhancer for Men" "relate[s] to the nature of the product and are not mere product descriptions").

Plaintiffs have alleged that RBLLC failed to comply with a "written warranty" in violation of the § 2310.  They have therefore stated a claim under the MMWA.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request this this Court deny RBLLC's motion to dismiss in its entirety.

Respectfully submitted,

DATED: October 7, 2014                VARNELL & WARWICK, P.A.

By:/s/ Brian W. Warwick_____
Brian W. Warwick, Fla. Bar No.: 605573
Janet R. Varnell, Fla. Bar No.: 71072
Steven T. Simmons, Jr., Fla. Bar No.: 91654
P.O. Box 1870
Lady Lake, FL  32158
Tel:  (352) 753-8600
Fax:  (352) 504-3301
Email: bwarwick@varnellandwarwick.com
        jvarnell@varnellandwarwick.com
        ssimmons@varnellandwarwick.com

20

Charles J. LaDuca (*Pro Hac Vice*)
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Tel:  (202) 789-3960
Fax:  (202) 789-1813 (fax)
Email:  charlesl@cuneolaw.com

William H. Anderson (*Pro Hac Vice*)
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Tel:  (202) 789-3960
Fax:  (202) 789-1813
Email:  wanderson@cuneolaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of October, 2014, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system and that a true and correct copy of the foregoing has been furnished via electronic mail to:

Karen P. Finesilver
K&L GATES LLP
Southeast Financial Center
200 South Biscayne Blvd.
Suite 3900
Miami, FL  33131-2399
Email:  Karen.finesilver@klgates.com

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
John.Rotunno@klgates.com
Paul.Walsen@klgates.com
Molly.McGinley@klgates.com
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602-4207

/s/ Brian W. Warwick
Brian W. Warwick

21