UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW BURNETT and THOMAS
BELCASTRO, on behalf of
themselves and all others
similarly situated,

        Plaintiffs,

v.                        Case No. 8:14-cv-1361-T-33MAP

ROBERT BOSCH LLC, USA,

        Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Robert Bosch LLC, USA's (Bosch) Dispositive Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. # 38), filed on September 23, 2014. Plaintiffs Matthew Burnett and Thomas Belcastro filed a response in opposition to the Motion on October 7, 2014. (Doc. # 45). Thereafter, on October 13, 2014, Plaintiffs filed a Notice of Errata providing corrections to their response. (Doc. # 46). Then, with leave of Court, Bosch filed a reply. (Doc. # 49). For the reasons stated below, the Motion is denied and a hearing on this matter is not needed.

**I.**    **Background**

Bosch manufactures, markets, and sells "Bosch Platinum Series Spark Plugs" (Spark Plugs). (Doc. # 29 at ¶¶ 2-3). The Spark Plugs are distributed nationwide through numerous retailers including "big box" retailers. (Id. at ¶ 16).

### A. Matthew Burnett

Burnett has a background in recycling and a commitment to animals. (Id. at ¶ 11). In fact, he is the founder of Pans4Paws, Inc. – a charitable organization that collects used pots, pans, and other metallic objects and then sells the metal for scraps. (Id.). The funds are then donated to various humane societies. (Id.).

This background caused Burnett to investigate the recycling ramifications of platinum center electrode Spark Plugs. (Id.). In May of 2014, Burnett purchased multiple Spark Plugs because "they were marketed as having platinum center electrodes." (Id. at ¶ 10). When Burnett began opening the Spark Plugs, he noticed that the "coloring of the center electrode was off, and not the same color as the tip." (Id. at ¶ 19). Burnett also determined that the substance at the center of the electrode was attracted to a magnet, which according to Burnett a platinum Spark Plug should not do. (Id.). By conducting acid testing, Burnett confirmed that the center electrode was not platinum. (Id.). Therefore, despite

2

the marketing statements and significant premium charged for the Spark Plugs, Burnett learned that they do not have the platinum center electrode so heavily marketed by Bosch. (<u>Id.</u> at ¶ 11).

Upon learning this information, Burnett contacted Bosch directly. (<u>Id.</u> at ¶ 12). After several conversations between Burnett and various Bosch employees, Bosch sent a donation to Pans4Paws. (<u>Id.</u>). However, Bosch neither solicited, nor received, a release from Burnett. (<u>Id.</u>). Likewise, no Bosch employee indicated that the donation was intended to buy Burnett's silence or end his personal claims against Bosch. (<u>Id.</u>).

### B. **<u>Thomas Belcastro</u>**

Belcastro purchases cars, repairs them, and sometimes resells them. (<u>Id.</u> at ¶ 13). For at least two years, Belcastro purchased several Spark Plugs each month – from his local AutoZone - for installation in his cars and occasionally for his girlfriend's car. (<u>Id.</u>). According to the Amended Complaint, Belcastro purchased the Spark Plugs because of, among other reasons, the representation as to their durability stemming from the inclusion of the platinum center electrode. (<u>Id.</u>).

Plaintiffs suggest that Bosch's advertising and marketing materials for the Spark Plugs focus on the use of platinum. (Id. at ¶ 18). Namely, Bosch produced and distributed a brochure entitled "Platinum Series Spark Plugs." (Id.). The brochure, which was on Bosch's website as recently as May 23, 2014, and references a copyright date of 2010, states "Only Bosch uses a platinum center electrode that's heat-fused into a ceramic insulator." (Id.).

However, as detailed above, Plaintiffs contend that the Spark Plugs do not have a platinum center electrode. (See Doc. # 29). "As a result, the marketing and sale of the Spark Plug constitutes unfair and deceptive trade practices in violation of the laws of Florida, California, Illinois, Michigan, New Jersey, and New York." (Id. at ¶ 4). As a result, Plaintiffs initiated this purported class action against Defendants Bosch and Robert Bosch GmbH [1] on behalf of themselves and all others similarly situated who purchased Spark Plugs from June 6, 2010, to the present. (See Doc. # 1).

Plaintiffs filed an Amended Complaint on September 2, 2014, asserting violations of the Consumer Protection

---

[1]  On October 7, 2014, Robert Bosch GmbH was terminated as a Defendant in this action. (Doc. # 43).

4

Statutes of Florida, California, Illinois, Michigan, New Jersey, and New York (Count I), Breach of State Warranty Law (Count II); Unjust Enrichment (III); and Breach of the Magnuson-Moss Warranty Act (Count IV). (See Doc. # 29). Bosch filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on September 23, 2014 (Doc. # 38), which is ripe for this Court's review.

## II. **Legal Standard**

### A. **Rule 12(b)(1)- Lack of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001). Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).

A facial attack on the complaint requires "the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)(quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)). Factual attacks, in comparison, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings. . . ." Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999)(quoting Lawrence, 919 F.2d at 1529). When the jurisdictional attack is factual, the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach. Scarfo, 175 F.3d at 960. Because the very power of the Court to hear the case is at issue, the Court is free to weigh evidence outside the four corners of the complaint. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 732 (11th Cir. 1982).

**B. Rule 12(b)(6) - Failure to State a Claim**

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable

inferences from the allegations in the complaint. <u>Stephens v.</u>
<u>Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th
Cir. 1990)("On a motion to dismiss, the facts stated in [the]
complaint and all reasonable inferences therefrom are taken
as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal
citations omitted). Further, courts are not "bound to accept
as true a legal conclusion couched as a factual allegation."
<u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

In accordance with <u>Twombly</u>, Federal Rule of Civil
Procedure 8(a) calls "for sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its
face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting
<u>Twombly</u>, 550 U.S. at 570). A plausible claim for relief must
include "factual content [that] allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." <u>Id.</u>

**III. <u>Analysis</u>**

### A. **Lack of Subject Matter Jurisdiction**

In order to establish Article III standing, a plaintiff must demonstrate: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury is likely to be redressed by a favorable decision. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). An "injury in fact [consists of] an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and internal quotations omitted). An allegation of an abstract injury will not suffice. See *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990) ("Plaintiffs in the federal courts must have a personal stake in the outcome of the case, and must allege some threatened or actual injury resulting from the putatively illegal action. Abstract injury is not enough. . . . ") (citations and internal quotations omitted). Absent allegations establishing "a personal detriment" to the plaintiff, jurisdiction does not exist. *Zinn v. SCI Funeral Servs. of Fla., Inc.*, 568 F. App'x 841, 842 (11th Cir. 2014).

According to Bosch, Plaintiffs lack standing to bring this action for a plethora of reasons. (See Doc. # 38). First,

Bosch submits that Plaintiffs have failed to plead a legally cognizable injury. (Id. at 13-16). Next, Bosch contends that Plaintiffs lack standing to assert claims under the laws of California, Illinois, Michigan, New York and New Jersey as "[P]laintiffs are residents of Florida who do not allege that they purchased Spark Plugs, or suffered any supposed injury of any kind, in any other state." (Id. at 17-18). Furthermore, Bosch argues that Plaintiffs lack standing to bring claims as to other Spark Plugs in the Platinum Series product line that they never purchased. (Id. at 20). Finally, Bosch argues that Plaintiffs lack standing to seek injunctive relief. (Id. at 18-19).

According to Plaintiffs, however, this Court should defer ruling upon the issue of standing until the class certification stage of the proceedings. (Doc. # 45 at 15); see Porter v. Chrysler Grp. LLC, No. 6:13-CV-555-ORL-37, 2013 WL 6839872, at *2-3 (M.D. Fla. Dec. 27, 2013). Nonetheless, Plaintiffs suggest that they have alleged that they suffered financial injuries as a result of Bosch's conduct, specifically, in the form of paying a premium price for Spark Plugs that they believed were made from platinum. (Doc. # 45 at 9-12). Furthermore, Plaintiffs contend that while they are Florida residents, they allege an identical injury to those

sustained by residents in California, Illinois, Michigan, New Jersey, and New York, and therefore, have standing to bring claims on behalf of citizens from those states. (Id. at 15-16).

The amount of proof required to establish standing varies with the progression of the litigation. See Lujan, 504 U.S. at 561 ("Since [the standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."). "To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974).

Here, Plaintiffs allege that the Spark Plugs were defective and that the same defect is present in products in five other states. (See Doc. # 29). Therefore, at this time, Plaintiffs have adequately pled that they have standing to bring this action on behalf of the purported class. As the litigation progresses, however, Plaintiffs will be required

to establish that they have Article III standing to raise the class claims prior to this Court considering whether the Plaintiffs adequately represent the proposed class. See Prado–Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)("[P]rior to the certification of a class . . . , the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."). However, Plaintiffs need not prove this requirement at this time. "Such fact-intensive Article III standing inquiry is better suited to the class-certification stage." Porter, 2013 WL 6839872, at *2-3; see Murray v. Auslander, 244 F.3d 807, 810 (11th Cir. 2001) (noting that standing in class actions is a fact-specific inquiry); cf. Clancy v. Bromley Tea Co., No. 12–cv-3003–JST, 2013 WL 4081632, at *4 (N.D. Cal. Aug. 9, 2013)(declining to dismiss a class action on standing grounds even though the purported class related to products that the named plaintiff did not purchase, and noting that "the question of whether a proposed class can bring claims related to other products is an issue properly addressed at the class certification stage.").

   At that time, the Court will also analyze the related issue of typicality. See Murray, 244 F.3d at 811 ("A class representative must possess the same interest and suffer the

same injury as the class members in order to be typical. . . .").  Therefore, Bosch's Motion – as to the issue of standing - is denied without prejudice. Bosch may reassert its standing argument at the class certification stage of the proceedings.

**B. <u>Failure to State a Claim</u>**

**1. <u>Florida Deceptive and Unfair Trade Practices Act</u>**

According to Bosch, Plaintiffs failed to state a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). (Doc. # 38 at 21). To state a claim under FDUTPA, a plaintiff must demonstrate: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. <u>Hetrick v. Ideal Image Dev. Corp.</u>, 758 F. Supp. 2d 1220, 1229 (M.D. Fla. 2010).

To begin, Bosch contends that Plaintiffs have failed to plausibly allege a deceptive act or unfair practice. (Doc. # 38 at 22). Specifically, Bosch argues that Plaintiffs do not allege that a consumer "acting reasonably in the circumstances" would be misled. (<u>Id.</u>). Instead, Plaintiffs claim that the term "platinum center electrode," when used in reference to the Spark Plugs constitutes a representation that "the entire center portion, and not just the tip" of the Spark Plugs are composed of platinum. (<u>Id.</u>). According to

Bosch, Plaintiffs' central claim regarding the design of the Spark Plugs is based on an illustration of an entirely different spark plug than the one in question. (Id. at 23-25). Thus, by doing so, Bosch submits that Plaintiffs want the Court to assume that all spark plugs are the same and incorporate the same design. (Id.). Therefore, Bosch argues that Plaintiffs have failed to show how Bosch's representations are false or misleading.

In response, Plaintiffs submit that they have alleged a deceptive act or unfair practice as Bosch's brochure suggested to consumers that the Spark Plugs were made of platinum, and this representation was false. (Doc. # 45 at 16). Specifically, the brochure claims that "Bosch uses a platinum center electrode that's heat-infused into a ceramic insulator." (Id.). Furthermore, according to Plaintiffs, the brochure illustration falsely suggests that the center portion is the same silver color and substance as the Spark Plug's platinum tip, while in reality, the Spark Plug's center is neither platinum nor silver in color. (Id. at 17-18). These allegations demonstrate that it would be "unreasonable for a consumer to read the brochure's claim as suggesting that only the tip of the Spark Plug is made from platinum." (Id. at 17). Rather, Plaintiffs aver that it is particularly

plausible that the brochure would mislead a reasonable consumer into believing that the Spark Plugs contained more platinum than they actually did. (Id. at 18).

"[W]hen considering whether a defendant's actions support a finding of unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce, courts have regarded the concept as extremely broad." MJS Music Publ'n, LLC v. Hal Leonard Corp., No. 8:06-cv-488-T30EAJ, 2006 WL 1208015, at *2 (M.D. Fla. May 4, 2006)(internal quotation marks omitted). Whether particular conduct constitutes an unfair or deceptive trade practice is a question of fact. Siever v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1292-93 (M.D. Fla. 2009).

In order for this Court to make a determination as to whether there was a deceptive act or unfair practice, the Court would be required to look outside the four corners of the Amended Complaint – to Bosch's brochures, advertisements, packaging, and website – which this Court declines to do at this time. Such a determination is better suited for the summary judgment stage. As this Court finds it appropriate to reserve its analysis on this initial element, the Court further declines to address the elements of causation and actual damages at this juncture. The Court will make its

determination on Plaintiffs' FDUTPA claim - in its entirety – when it is not confined to the four corners of the operative complaint. Therefore, Bosch's Motion is denied.

## 2. Breach of Express Warranty

To establish a cause of action for breach of express warranty a plaintiff must allege: (1) the sale of goods, (2) the express warranty, (3) breach of the warranty, (4) notice to seller of the breach, and (5) the injuries sustained by the buyer as a result of the breach of the express warranty. Jovine v. Abbot Labs., Inc., 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011). In order for an affirmation to give rise to an express warranty, a plaintiff must have relied on the affirmation in making his purchase such that the affirmation forms the basis of the bargain. Aprigliano v. Am. Honda Motor Co., Inc., 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013).

According to Bosch, Plaintiffs' conclusory allegation that they relied on the supposed express warranty given by Bosch is not supported by any factual allegations, and therefore, it cannot be taken as true for purposes of the present Motion. (Doc. # 38 at 29). Particularly, Bosch argues that "[t]here are no factual allegations indicating that [P]laintiffs saw, read or heard any affirmation or promise that the 'entire center portion, and not just the tip' of the

Spark Plug is comprised of platinum before they made any purchases of Platinum Series Spark Plugs." (Id.). Further, Bosch argues that Plaintiffs fail to allege that they purchased the Spark Plugs directly from Bosch, therefore, Plaintiffs lack the necessary privity of contract in order to recover for breach of express warranty. (Id. at 30)(citing Fields v. Mylan Pharms., Inc., 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009) ("A plaintiff who purchases a product but does not buy it directly from the defendant, is not in privity with that defendant.")).

According to Plaintiffs, however, "Florida law does not permit a business to offer an express warranty to end purchasers, only to then shield themselves in an absence of privity." (Doc. # 45 at 21).   In fact, Plaintiffs suggest that courts in this district have declined to require privity in all cases. (Id.) (citing Mardegan v. Mylan, Inc., No. 10-cv-14285, 2011 WL 3583743, n. 4 (S.D. Fla. Aug. 12, 2011)). Instead, privity is unnecessary where "(1) there are no facts in the pleadings indicating [p]laintiffs could have expected to receive relevant information about the true nature of the product and (2) the alleged express warranty was contained on the products' packaging and consumer advertising." (Id.)(citing Garcia v. Kashi Co., No. 12-21678-CIV, 2014 WL

16

4392163, at *21-22 (S.D. Fla. Sept. 5, 2014); <u>Karhu v. Vial Pharm., Inc.</u>, No. 13-60768-CIV, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013); <u>Smith v. Wm Wrigley Jr.</u>, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009)).

The Court acknowledges that several courts have held that absent privity there can be no claim for the breach of an express warranty. <u>See</u> <u>T.W.M. v. Am. Med. Sys., Inc.</u>, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (stating that "[t]he law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant."); <u>Weiss v. Johansen</u>, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005) (stating that "in order to recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."); <u>Intergraph Corp. v. Stearman</u>, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) (stating that "[p]rivity is required in order to recover damages from the seller of a product for breach of express or implied warranties.").

Despite such case law, however, other courts applying Florida law have found exceptions allowing express warranty claims to proceed even absent privity. <u>See</u> <u>Fed. Ins. Co. v. Lazarra Yachts of N. Amer., Inc.</u>, No. 8:09-CV-607-T-27MAP, 2010 WL 1223126, at *6 (M.D. Fla. March 25, 2010) (applying

Florida law and finding that a breach of express warranty claim could be brought under the Magnuson Moss Warranty Act despite a lack of privity and stating that "[c]ourts have relaxed the privity requirement where the express warranty was clearly intended to extend coverage to subsequent owners.") Smith, 663 F. Supp. 2d at 1343 (applying Florida law and denying a motion to dismiss an express warranty claim on lack of privity based on "the particular facts of the case"); Rentas v. DaimlerChrysler Corp., 936 So. 2d 747, 751 (Fla. 4th DCA 2006) (allowing an express warranty claim to proceed despite the absence of privity and stating that "[t]his court and other Florida appellate courts have expressly enforced written warranties in suits brought under the [Magnuson–Moss Warranty Act] against manufacturers where privity did not exist between the manufacturer and the vehicle owner."). Thus, the Court does not find that absent privity, Plaintiffs' express warranty claim is automatically barred under Florida law. Accordingly, the Court denies Bosch's Motion as to this ground.

Furthermore, the Court notes that in order for this Court to determine whether Plaintiffs relied on an affirmation or promise that the "entire center portion, and not just the tip" of the Spark Plug was comprised of platinum before they

made their purchase, the Court would have to look outside the four corners of the Amended Complaint. Specifically, at Bosch's brochures, advertisements, and website. The Court declines to do so at this juncture; such analysis is better suited for the summary judgment stage of the proceedings. Accordingly, Bosch's Motion is denied.

### 3. Unjust Enrichment

Bosch contends that Plaintiffs may not pursue their unjust enrichment claim because "Plaintiffs' purported unjust enrichment claim is expressly based upon the same alleged 'misconduct' [pled] elsewhere in the [Amended Complaint] as well as supposed 'deliberate misrepresentation or omission.'" (Doc. # 38 at 31). However, the Court finds that Plaintiffs may plead an equitable relief claim in the alternative to its breach of express warranty claim. See e.g., Resnick v. AvMed, Inc. 693 F.3d 1317, 1327-29 (11th Cir. 2012); Shibata v. Lim, 133 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000) ("Both the Federal Rules of Civil Procedure and Florida law permit a party to allege, in the alternative, recovery under an express contract and seek equitable relief under the theory of unjust enrichment."). Therefore, the Court will analyze the sufficiency of Plaintiffs' unjust enrichment claim.

To state a claim for unjust enrichment, a plaintiff must allege, "(1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit, (2) the defendant voluntarily accepted and retained the benefit, and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it." Leedom Mgmt. Grp., Inc. v. Perlmutter, No. 8:11-cv-2108-T-33TBM, 2012 WL 1883765, at *4 (M.D. Fla. May 22, 2012). Here, Plaintiffs have alleged that "(1) they conferred profits on [Bosch] by buying the Spark Plugs, (2) [Bosch] has knowingly retained the benefit, and (3) [Bosch's] enrichment was a result of their 'deliberate misrepresentations or omissions made in connection with the advertising, marketing, promotion, and sale of the Spark Plugs.'" (Doc. # 29 at ¶ 49; Doc. # 45 at 23). Thus, taking the allegations as true, for purposes of the present analysis only, Plaintiffs have demonstrated enough to survive Bosch's Motion to Dismiss. Accordingly, Bosch's Motion is denied.

### 4. **Magnuson-Moss Warranty Act**

The Magnuson-Moss Warranty Act (MMWA) provides a federal remedy for "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any

obligation under . . . a written warranty, implied warranty, or service contract. . . ." Cunningham v. Fleetwood Homes of Ga., Inc., 253 F.3d 611, 618 (11th Cir. 2001). Under the MMWA, a consumer is defined as a buyer (other than for purposes of resale) of any consumer product. Burns v. Winnebago Indus., Inc., No. 8:11-CV-354-T-24-TBM, 2012 WL 171088, at *2 (M.D. Fla. Jan. 20, 2012) aff'd, 492 F. App'x 44 (11th Cir. 2012). Furthermore, pursuant to the MMWA, a written warranty includes only specified product affirmations, promises, or undertakings made to "a buyer for purpose other than resale of such product." Simmons v. Taylor Childre Chevrolet-Pontiac, Inc., 629 F. Supp. 1030, 1032 (M.D. Ga. 1986).

Bosch argues that Plaintiffs are not consumers under the MMWA as Burnett admits that his purpose in acquiring the Spark Plugs was to explore the viability of selling their platinum content as scrap and Belcastro admits that he purchased the Spark Plugs for cars that he "purchases . . . repairs . . . and sometimes resells." (Doc. # 38 at 32). Accordingly, Bosch argues that any statements made to Plaintiffs regarding the composition of the center electrode of the Spark Plugs could not give rise to a written warranty under MMWA. (Id.). In addition, Bosch suggests that a statement that the Spark Plugs

have a platinum center electrode does not constitute a warranty under the MMWA because such description does not constitute an affirmation or promise that the Spark Plugs are "defect free" or that they will meet "a specified level of performance over a specified period of time." (Id.).

According to Plaintiffs, Bosch's Spark Plug suppliers and warrantors "ran afoul of the MMWA by failing to abide by their express warranties to Plaintiffs, Spark Plug consumers." (Doc. # 45 at 23). Further, Plaintiffs argue that Burnett falls under the MMWA definition of consumer as Burnett bought Spark Plugs other than for the purpose of resale – he bought them to donate their parts to charity. (Id. at 24). Moreover, Plaintiffs suggest that Bosch's assertion that their Spark Plugs contain platinum center electrodes constitutes a "written affirmation of fact made in connection with the sale of a consumer product" and that "relates to the nature of material." (Id.). Thus, without a platinum center electrode, the Spark Plugs have a "shortcoming" that is "essential to the operation," which equates to the product being defective. (Id.)(citing Dorsey v. Rockhard Labs, LLC, No. CV-13-07557-DDP(RZx), 2014 WL 4678969, at *9 (C.D. Cal. Sept. 9, 2014)).

22

The Court looks to the substantive law of the applicable state to determine whether MMWA claims are viable, which under the present circumstances is Florida's law on breach of express warranties. See, e.g., Johnson v. Jaguar Cars, Inc., No. CIV.A.1:05CV3161-RLV, 2006 WL 1627125, at *2 (N.D. Ga. June 6, 2006). As stated above, to properly evaluate Plaintiffs' breach of express warranty claim, this Court would have to convert Bosch's Motion to Dismiss to one of summary judgment as it would have to look at items outside the four corners of the Amended Complaint. As a result, Bosch's Motion to Dismiss is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Robert Bosch LLC, USA's Dispositive Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. # 38) is **DENIED.**

(2)  Defendant has until and including **November 19, 2014**, to file its Answer to Plaintiffs' First Amended Complaint.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 5th day of November, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

23